MEMORANDUM OF DECISION
This is an action for termination of parental rights instituted by the Department of Children and Families (DCF) on January 18, 1996 at the Superior Court for Juvenile Matters in Hartford and subsequently transferred to the Child Protection Session. The putative father is Stephen R. M. who signed a consent form to have his parental rights terminated. The putative father was personally served in hand. The mother Stephanie D. was served first by publication, but subsequently her address was disclosed and she had counsel appointed for her, and she personally appeared to contest this action for termination of her parental rights.
FACTUAL FINDINGS
The child is Christal T. M., born on October 21, 1993. She has two siblings, Jonathan S., born in 1988, and Sabrina S., born in 1989. Neither of the older children live with their mother. Those children have been removed from Stephanie's care and are living with the biological father (Jonathan) and with the maternal grandmother (Sabrina). Stephanie has been involved with DCF for at least eight years. She has been largely homeless since 1994. Stephanie's other children have been neglected and as to them, she has been subject to criminal charges of risk of injury. CT Page 5823 On November 8, 1994, a petition of alleged neglect and uncared for was filed by DCF alleging that Christal was neglected and uncared for. The petition alleged that Stephanie was involved with drugs since she was fifteen; that she had left her child uncared for and with caretakers without proper arrangements; and that Stephanie stabbed herself and threatened suicide while holding the child.
Prior to this proceeding, in December 1993, Stephanie was arrested for risk of injury to a minor involving her oldest son. She had allegedly struck and bruised the child. Subsequently the custody of that child was transferred to the biological father with whom the child remains to this day.
In October 1994 she was again arrested for risk of injury to a minor when she attempted to harm herself by stabbing herself and threatening suicide while holding the child, Christal. She left Christal with the maternal grandmother who was unable to care for Christal. Maternal grandmother called the Careline on November 4, 1994 and indicated that she could no longer care for Christal and that she did not know where the child's mother was living and requested DCF intervention. Based upon these developments, DCF filed a petition based upon neglect and uncared for.
When Stephanie was arrested in October she had an extensive prior criminal record. She was given the option to go in to a new program called Fresh Start which had just been established. The assistant program director testified that this program was new when Stephanie was admitted on December 20, 1994. She was the fourth person admitted to this new program. The program called for eighteen months of inpatient treatment. The program could accommodate twenty-two women and eleven children. The women had to be jail-bound to be eligible for the program. As a result of her arrest on the October risk of injury charge Stephanie was given the option of going to jail or completing the Fresh Start Program.
Since Stephanie was jail-bound, from the Hartford area, over sixteen years of age, and with no history of arson or violence, she was elected to enter the program. The program offered drug and psychiatric counseling as well as parent training. The Fresh Start residence was secure and staffed twenty-four hours a day. On February 6, 1995, after Stephanie had been in the program for little more than a month, she absconded from the program after a CT Page 5824 minor altercation regarding phone privileges. Stephanie testified that she knew she was violating her probation by leaving the program. Thereafter two warrants were issued for her arrest.
She was in hiding until she got into another altercation involving an assault. "this guy assaulted me in the street" Stephanie said. She was brought to a Hartford hospital. The police were summoned and Stephanie was arrested based upon the two outstanding warrants. She was found to have violated probation. She had previously received a sentence of five years, execution suspended, with five years probation after her last risk of injury charge. She had been admitted to the Fresh Start program in lieu of jail. Since she failed to successfully complete the program, she was found to be in violation of probation and received a sentence of two years to serve. She remains incarcerated at this time.
After the child had been in the custody of DCF for a year, Stephanie called DCF in November 1995, while she was a fugitive, and asked that some of her family members have contact with Christal. She had not visited the child herself in a year and did not ask for visitation for herself. She refused to tell DCF where she resided. She asked the DCF caseworker about the color of Christal's hair, and what she looked like. The caseworker told her about Christal's developmental delays. Stephanie did not ask to call the child or send her cards or gifts. Stephanie did not attend any administrative treatment planning. The caseworker suggested to Stephanie that she should turn herself in to the authorities since there were warrants outstanding for her arrest.
Stephanie testified to the rambling, transient existence of a homeless drug addicted person. She indicated she had not had her own place in six years. She lived with various family members, her brother, her mother her sister in Boston, friends, whose names she had forgotten, and in shelters during her period of fleeing the police.
The records and testimony elicited at trial show an extensive criminal record, a history of substance abuse, the opportunity for various treatment modalities, including the opportunity to address her problems and learn good life skills at the Fresh Start program. Stephanie has abdicated her role as a parent figure to all of her children. She will likely remain incarcerated for more than another year. She is not now available as a parent and would likely require some period of time after CT Page 5825 her release to address her personal as well as her parenting difficulties. Neither parent has ever provided a home for this child. The father Stephen M. has signed a consent to termination of his parental rights.
This child is now approaching three years of age and has a close parental bond with her foster family. The foster mother is alert to the child's needs and is physically and emotionally available to the child. Christal considers the foster family to be her own family.
The court finds by clear and convincing evidence that this child was previously found to be neglected and uncared for and committed to the Commissioner of the Department of Children and Families on December 20, 1994. The court further finds by clear and convincing evidence that Stephanie has failed to rehabilitate herself to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the child, she could assume a responsible position in the life of this child.
The court further finds by clear and convincing evidence that there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child, and to allow further time for the establishment of such a parent-child relationship would be detrimental to the best interests of the child. The court finds that these grounds have existed for more than one year.
It is unnecessary to address the other grounds. They are dismissed without prejudice. The consent to terminate the parental rights signed by the respondent Stephen R. M. is accepted by the court.
Pursuant to § 17a-112(d), as amended, the court makes the following written findings.
1) Regarding the nature and extent of services provided to the respondent, the record reflects that Stephanie was frequently homeless or in hiding which made the delivery of services virtually impossible. She was offered the Fresh Start program and the child was offered the Birth-to-Three program. Case management services and visitation services were offered. CT Page 5826
2) Regarding DCF efforts for reunification pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended, and § 17a-112(b) of the General Statutes: The court finds that DCF made reasonable efforts to place the child with the maternal grandmother and was asked to contact other family members who might possibly serve as a placement resource. The family was not willing or able to provide for the child.
3) With regard to court orders and expectations, the DCF and the mother entered into expectations which were approved by the court. Those expectations were completely disregarded by Stephanie. They called for random drug urine screens, follow-up in after care for drug treatment and counseling programs, in-patient drug treatment and individual counseling. The expectations also called for Stephanie to keep the agency advised of her whereabouts. She did not. The final expectation was for Stephanie to avoid further involvement with the criminal justice system. She failed to do that.
4) The child's feelings are directed solely toward the foster family with whom the child has lived since her removal from the maternal grandmother on November 4, 1994. Stephanie contacted the DCF worker a year later, November 1995, to ask for visitation for members of her family. She did not ask for visits for herself. Her position with the child is that of a stranger.
5) The child is nearly three and will be over four years of age before the mother will be released from the correctional center. Even then a period of adjustment and counseling would be required with no guarantee of favorable outcome. The child needs a stable and secure home immediately.
6) The parents have made no concerted effort to adjust their lifestyles to accommodate this young child.
7) No barriers have been placed in the path of the parents to prevent their reunification or the establishment of a relationship with the child. The only barrier has been the mother's self-indulgent lifestyle and substance abuse. Her historical focus has been on meeting her own needs without any regard for the needs of her biological offspring.
The court finds by clear and convincing evidence that the interests of the child would be best served by a termination of the parental rights of the biological parents. CT Page 5827
ORDER
The parental rights of the biological male parent, Stephen R. M., are terminated by consent.
The court having considered all statutory considerations and having found by clear and convincing evidence that grounds exist for termination of parental rights, further finds upon all of the facts and circumstances presented, that it is in the child's best interest to terminate the parental rights of Stephanie D. Accordingly, it is ordered that the parental rights of Stephanie D. to the child Christal T. M. are hereby terminated.
It is further ordered that the Commissioner of the Department of Children and Families is hereby appointed the statutory parent for the purpose of securing an adoptive family or other permanent placement for said child and that the Commissioner shall file with the court, no later than ninety (90) days following the date of judgement, a written report toward such permanent placement, and file such further reports as are required by state and federal law.
F. J. Foley, Judge